**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY J. PAINADATH, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 22-3604 |
| MELISSA LATTANZIO, et al., | |
| *Defendants.* | |

**PAPPERT, J.**                                                    **July 19, 2023**

<u>**MEMORANDUM**</u>

Nurse Jerry Painadath, proceeding *pro se*, alleges in his Amended Complaint that his former employer, Philadelphia Post-Acute Partners, LLC d/b/a Good Shepherd Penn Partners ("GSPP"), and three of its employees retaliated against him for reporting patient safety concerns. He sued employees Melissa Lattanzio, Natalie Blanden and Tiana Belton (the individual defendants) for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964; Lattanzio and Blanden for violations of the Pennsylvania Professional Nursing Law, 63 P.S. § 211; and GSPP for violations of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116 & 29 U.S.C. § 218c; Title VII, 42 U.S.C. § 2000e *et seq.*; and the Pennsylvania Older Adults Protective Services Act ("OAPSA"), 35 P.S. § 10225.101 *et seq*.

The defendants move to dismiss the Amended Complaint. (ECF 21.) After considering the Motion and all responses and replies, (ECF 22, 23, 24), the Court grants Defendants' motion. Painadath's RICO and Professional Nursing Law claims against the individual defendants are dismissed with prejudice, and his claims against GSPP are dismissed without prejudice.

I

GSPP employed Painadath as a "clinical nurse 2" from July of 2020 until December of 2021.  (Am. Compl. ¶¶ 28, 37, 62.)  Painadath alleges that he reported several patient safety-related incidents during his tenure, and that GSPP became increasingly hostile toward him as a result.  (*Id.* at ¶ 47.)

On May 14, 2021, Painadath says that he found a "full vial of Naropin," an anesthetic, on a patient's bedside table.  (*Id.* at ¶ 44.)  Believing the drug to be "lethal," he removed it from the table, "destroyed it," and reported the incident internally.  (*Id.* at ¶ 45.)

Painadath claims that in August of 2021 he was "left with notice" for reporting to management that "CNA Crystal" assaulted him and used excessive force on a patient.  (*Id.* at ¶¶ 53–55.)  He alleges that on September 30, 2021, he was suspended for reporting "an older African American patient's neglect" by "CNA Jasmine."  (*Id.* at ¶ 58.)  On December 14, 2021, Painadath was terminated, allegedly for filing an ACA violation complaint with OSHA on December 5, 2021.  (*Id.* at ¶¶ 61–62, 74.)  He also claims GSPP retaliated against him for filing the ACA complaint by "ostraciz[ing]" him from other healthcare employers in the area, although he began working for Kindred Hospital in January of 2022.  (*Id.* at ¶¶ 64, 75.)

II

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the factual allegations in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court "must

2

accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. It "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *Pro se* litigants' pleadings must be liberally construed, although they "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239 (3d Cir. 2013).

### III

### A

Painadath claims Lattanzio, Blanden and Belton violated the RICO statute. To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).[1] "Racketeering activity" is defined by an enumerated list of predicate acts under 18 U.S.C. § 1961(1). A RICO plaintiff must show that the defendant committed two or more predicate acts within a ten-year period to establish the requisite pattern of racketeering activity. 18 U.S.C. § 1961(5).

The alleged predicate acts upon which Painadath ostensibly relies are his claims that the three individual defendants violated 18 U.S.C. § 229 (relating to chemical

---

[1]    Painadath does not specify which subsection of 18 U.S.C. § 1962 he is invoking. Because there is no indication that Lattanzio, Blanden or Belton controlled, invested in, or had an interest in an enterprise engaged in interstate or foreign commerce, the Court will analyze his claim under § 1962(c), which applies to employees and associates of an enterprise engaged in interstate or foreign commerce.

weapons), 18 U.S.C. § 1503 (obstruction of justice) and 18 U.S.C. § 1591 (sex trafficking of children).[2]  He also claims that Lattanzio violated 18 U.S.C. § 664 (embezzlement from pension and welfare funds).

18 U.S.C. § 229 implements the international Convention on Chemical Weapons and "makes it a federal crime for a person to use or possess any chemical weapon." *Bond v. United States*, 572 U.S. 844, 847 (2014).  Painadath alleges that he found a "full vial" of the anesthetic Naropin on a patient's bedside table, and that the FDA warns that "rapid accidental administration" of Naropin can cause cardiac arrest.  This is insufficient for several reasons.  First, Painadath does not allege that Lattanzio, Blanden or Belton possessed the Naropin.  Second, many medications have harmful—even lethal—effects if improperly administered.  That does not make them chemical weapons.  Toxic chemicals possessed for peaceful purposes—including medical purposes—are not "chemical weapons."  18 U.S.C. § 229F.  Painadath found the Naropin at a nursing facility, and he does not allege any facts that could support an inference that it was present for a non-medical reason.  Finally, § 229 is inapplicable to local assaults such as the one Painadath alleges.  *See Bond*, 572 U.S. 844.

"Under 18 U.S.C. § 1503(a), the elements of a prima facie case of obstruction of justice are:  (1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice; and (4) the action had the natural and probable effect of interfering with the due administration of justice."

---

[2]      None of the allegations in the Amended Complaint suggest that this case involves either minors or sex trafficking.  The Court assumes this to be a typographical error and interprets the Amended Complaint to reference 18 U.S.C. § 1592, consistent with the pleading's language.

*United States v. Sussman*, 709 F.3d 155, 168 (3d Cir. 2013) (quotation omitted).

Painadath alleges that Lattanzio, Blanden and Belton "submitted false statements to

federal D[epartment] [of] L[abor] agents" and "misinformed [the] N[ational] L[abor]

R[elations] B[oard] that Plaintiff was given some sort of education or warning." (Am.

Compl. ¶ 79.)  He also alleges that Lattanzio "influenced a witness to give a false

statement to NLRB."  (*Id.*)  But Painadath has not alleged the existence of a *judicial*

proceeding covered by § 1503.  *See United States v. Aguilar*, 515 U.S. 593, 599 (1995).

Painadath asserts, ostensibly under 18 U.S.C. § 1592, that defendants

"prevented, without lawful authority, Plaintiff['s] liberty to travel, in order to maintain

labor." (Am. Compl. ¶ 80.)  Specifically, he alleges that they "prevented Plaintiff from

getting a job at US Navy, Thomas Jefferson, Upenn [sic], in order to maintain labor at

GSPP." (*Id.*)  "Section 1592 prohibits destroying or confiscating travel-related and

immigration-related documents in the course of a violation or with intent to violate the

Trafficking Act." *Mallela v. Cogent Infotech Corp.*, 2020 WL 2541860, at *6 (W.D. Pa.

May 19, 2020) (quotation omitted).  Painadath says that he interviewed with the Navy,

Thomas Jefferson, and "HUP," and implies that he did not land any of those jobs.  (Am.

Compl. ¶¶ 49.)  He alleges that the defendants interfered with his job search by giving

"bad reference[s]" or "no references," (*Id.* at ¶ 52), and accuses them of stealing

documents from his backpack after GSPP terminated him, while he was attending new

employee training at Kindred Hospital.  (*Id.* at ¶ 65.)  He does not allege that the stolen

documents were travel- or immigration-related.  None of the facts in the Amended

Complaint support a document-servitude allegation, nor could they.

Finally, Painadath asserts that Lattanzio violated 18 U.S.C. § 664 by stealing a "[g]ift of unspecified value awarded to Plaintiff for Haiti fundraiser." (Am. Compl. ¶ 77.) Section 664 applies to theft or embezzlement from employee welfare benefit plans and employee pension benefit plans. It does not apply to the funds or anything of value allegedly taken from Painadath.

Painadath's RICO claim fails because he does not allege facts sufficient to show that the defendants committed any predicate acts.

B

Painadath claims that Pennsylvania's Professional Nursing Law imposes a reporting obligation on registered nurses who witness unlawful activity, and that Lattanzio and Blanden violated the law by "fail[ing] to protect Plaintiff from unnecessary HR investigation for doing Plaintiff['s] duty under this act." (Am. Compl. ¶ 39 & p. 6.) He cites the Pennsylvania Standards of Nursing Conduct, 49 Pa. Code §21.18, as the source of this duty.

Pennsylvania's Professional Nursing Law does not create a private right of action. To the extent Painadath is trying to allege common law wrongful termination for reporting suspected neglect, he fails to do so. Pennsylvania follows the at-will employment doctrine, which permits an employer to dismiss an employee for any reason. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000). There is a narrow exception giving rise to a cause of action where the discharge violates clearly mandated public policy. *Nitkin v. Main Line Health*, 2021 WL 4860742, at *17 (E.D. Pa. Oct. 18, 2021). But "its application has been limited to the following three situations: where an employer (1) requires an employee to commit a crime; (2) prevents

6

an employee from complying with a statutorily imposed duty; or (3) discharges an employee when specifically prohibited from doing so by statute." *Id.* Where a plaintiff claims he was wrongfully terminated for complying with a mandatory reporting obligation, he must identify a statute that imposes a "dut[y] and threat of penalties for failure to take the action that [he] did." *Spierling v. First Am. Home Health Servs., Inc.*, 737 A.2d 1250, 1254 (Pa. Super. Ct. 1999); *Nitkin*, 2021 WL 4860742, at *17.

Painadath does not cite a specific standard under § 21.18, but two seemingly in line with the gist of his allegations are §§ 21.18(a)(3) and (b)(2). Section 21.18(a)(3) provides that "[a] registered nurse shall . . . [a]ct to safeguard the patient from the incompetent, abusive or illegal practice of any individual." In *Hennessy v. Santiago*, the Pennsylvania Superior Court held that an analogous professional standard requiring a "safe habilitative environment" for mental healthcare patients did not impose a reporting mandate because mental healthcare professionals could fulfill their duty without necessarily reporting suspected crimes against their patients. 708 A.2d 1269, 1274 (Pa. Super. Ct. 1998). Section 21.18(b)(2) prohibits a registered nurse from "discriminat[ing], while providing nursing services, on the basis of age, . . . [or] race . . . ." But a prohibition on personally engaging in certain conduct is not the same as a mandate to report the same conduct by others. *Diberardinis-Mason v. Super Fresh*, 94 F. Supp. 2d 626, 629 (E.D. Pa. 2000). The Standards of Nursing Conduct "do[ ] not affirmatively direct [Painadath] to report the alleged instances of medical negligence" or discrimination, so they do not support his wrongful discharge claim, to the extent he asserts one. *Lampenfeld v. Pyramid Healthcare, Inc.*, 2015 WL 926154, at *12 (M.D.

Pa. Mar. 4, 2015);[3] *accord United States v. Univ. of Pittsburgh of Commw. Sys. of Higher Ed.*, 2022 WL 14851121, at *5 (W.D. Pa. Oct. 26, 2022).

IV

A

Painadath alleges that GSPP violated 42 U.S.C. § 18001, the ACA provision concerning insurance for individuals with preexisting conditions.  But Painadath does not allege that he has a preexisting condition.  The Court assumes Painadath meant to allege a violation of 42 U.S.C. § 18116 (commonly referred to as "Section 1557"), the ACA's nondiscrimination provision.  That section provides that an individual cannot be excluded from a health program "on the ground prohibited under" Title VII (race, color or national origin); Title IX (sex); the Age Discrimination Act (age); or 29 U.S.C. § 794 (disability).  42 U.S.C. § 18116(a).  The ACA incorporates the analytical frameworks of the antidiscrimination statutes it references.  *See id.*; *see also Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019).  Painadath claims he is a member of a protected class based on his sex (male) and religion (Catholic).  (Am. Compl. at p.7.)  Religion is not a protected class for purposes of the ACA.  To state a claim for sex discrimination under Title IX, "the alleged facts, if true, must support a plausible inference that" the plaintiff was excluded "on the basis of sex."  *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020).  In other words, the plaintiff must allege that

---

[3]       The court in *Lampenfeld* believed that its holding was at odds with *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734 (E.D. Pa. 2011).  *Lampenfeld*, 2015 WL 926154, at *12.  It is not.  In *Tanay*, the court denied a motion to dismiss a wrongful discharge claim by a nursing home administrator terminated for reporting safety issues in the nursing home, based on the Nursing Home Administrator License Act's requirements that administrators maintain open lines of communication to ensure a high level of care and maintain compliance with governmental regulations.  *Tanay*, 810 F. Supp. 2d at 740.  But it distinguished the plaintiffs in cases like *Spierling* and *Diberardinis-Mason* from Tanay, who "was responsible for the overall management and safety" of the nursing home.  *Id.* at 741.  Painadath was not responsible for overall management and safety at GSPP.

sex was a "motivating factor" in the adverse decision. *Id.* Painadath alleges no facts suggesting that his loss of medical coverage was motivated by his sex.

B

Painadath claims that GSPP violated the ACA's whistleblower protections. 29 U.S.C. § 218c. He alleges he filed an ACA violation complaint with OSHA on December 5, 2021, and that for doing so GSPP terminated him on December 14, 2021 and "ostracized [him] from close-knitted healthcare companies in Philadelphia." (Am. Compl. ¶¶ 61–62, 74–75.) The applicable whistleblower protection provision provides that "[n]o employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee . . . provided . . . to the employer [or] the Federal Government . . . information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of" Title I of the ACA.[4] 29 U.S.C. § 218c(a)(2). Painadath does not state what he reported to OSHA, so he has not alleged facts establishing his reasonable belief that GSPP violated the ACA. Even assuming Painadath told OSHA that GSPP terminated his insurance because he is male, he has not alleged sufficient facts to show he reasonably believed GSPP cut off his insurance because of his sex.

C

Painadath's Title VII claim against GSPP fails for the same reason as his substantive ACA claim. Title VII prohibits employment discrimination because of an

---

[4]     Although § 218c is an amendment to the FLSA, it is understood to protect employees from retaliation for activity protected by Title I of the ACA. *Wilson v. EI DuPont de Nemours & Co.*, 710 F. App'x 57, 57 n.1 (3d Cir. 2018) (nonprecedential).

9

individual's race, color, religion, sex or national origin.  42 U.S.C. § 2000e-2(a).  His Amended Complaint fails to allege facts permitting an inference that Painadath suffered any adverse employment action *because* he is male and/or Catholic.

D

Pennsylvania's Older Adults Protective Services Act (OAPSA) permits, and in some cases requires, individuals to report to the area agency on aging if they believe that an older adult (age sixty or above) is the victim of abuse or in need of protective services.  35 P.S. §§ 10225.101 *et seq.*  "Any person making a report or cooperating with the agency . . . shall be free from any discriminatory, retaliatory or disciplinary action by an employer . . . ."  35 P.S. § 10225.302(c).  "Agency," as used in OAPSA, means "[t]he local provider of protective services, which is the area agency on aging or the agency designated by the area agency on aging to provide protective services in the area agency's planning and service area."  35 P.S. § 10225.103.  Painadath alleges that "[o]n September 30th, 2021 plaintiff was suspended from [his] job for reporting an older African American adult patient's neglect assigned to CNA Jasmine."  (Am. Compl. ¶ 58.)  Painadath fails to allege that the "report" was made to the local area agency on aging or its designee, so he does not establish that he falls within the scope of OAPSA's protections.  His allegation in paragraph 26 of the Amended Complaint that he "Notified PA Older adult protective services" is not sufficient, even under the liberal standard for interpreting *pro se* pleadings, because it does not show that he reported the incident involving CNA Jasmine to the appropriate local agency before September 30, 2021.

V

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008).  For the reasons stated above, any amendment to Painadath's RICO and Professional Nursing Law claims would be futile. Those claims are dismissed with prejudice and the individual defendants are dismissed from the case.  Painadath may amend his ACA, ACA whistleblower, Title VII and OAPSA claims against GSPP to the extent he is able to allege facts that address the pleading deficiencies discussed above.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.