IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY J. PAINADATH,<br><br>    *Plaintiff,*<br><br>v.<br><br>MELISSA LATTANZIO, et al.,<br><br>    *Defendants.* | CIVIL ACTION<br>NO. 22-3604 |

**PAPPERT, J.**                                        December 28, 2023

**MEMORANDUM**

  *Pro se* plaintiff Jerry Painadath alleges in his second amended complaint that his former employer, Good Shepherd Penn Partners, retaliated and discriminated against him because he is a Catholic man. He contends GSPP violated the Pennsylvania Older Adults Protective Services Act, Title VII of the Civil Rights Act of 1964 and the Affordable Care Act. GSPP moved to dismiss Painadath's second amended complaint in its entirety pursuant to Federal Rule of Procedure 12(b)(6). Rather than responding to GSPP's motion, Painadath filed a third amended complaint without the Court's leave or GSPP's consent. GSPP also moves to strike the proposed third amended complaint.

  For the reasons that follow, the Court grants GSPP's motion to strike and grants in part and denies in part its motion to dismiss. Specifically, the Court denies the motion with respect to Painadath's claims under the Older Adult Protective Services Act and the Affordable Care Act and grants it with respect to Painadath's Title VII claims. The Court will allow Painadath to file a third amended complaint consistent with the accompanying Order.

1

I

Jerry Painadath was employed at Philadelphia Post-Acute Partners, LLC d/b/a Good Shepard Penn Partners as a "clinical nurse 2." (Second Am. Compl. ¶ 20, ECF 35). The role entailed direct patient interactions, and Painadath alleges he reported several patient safety-related incidents during his employment. (*Id.* ¶¶ 26–30, 41). For instance, Painadath says he found a full vial of Naropin, an anesthetic, near a patient's bedside table. (*Id.* ¶¶ 26, 30). He also alleges he saw a GSPP employee use "excessive force" on a patient and observed a "neglect situation" involving an older, African American patient, which he reported to a clinical coordinator he calls "Mrs. Susan." (*Id.* ¶¶ 41, 53). Mrs. Susan allegedly said she would "secure [his] job" but Painadath would "have to lie down" for her. (*Id.* ¶ 53). Nonetheless, Painadath says he was suspended "in retaliation" for this report. (*Id.* ¶ 54). Undeterred, Painadath says he "gave an oral report" of the neglect to the local area of aging in November of 2021. (*Id.* ¶ 55).

Painadath claims GSPP employees became increasingly hostile toward him. (*Id.* ¶¶ 42, 44, 47). He says he suffered from emotional stress, was "assaulted and called names" by co-workers and "left with notice" for reporting the alleged bad behavior by a co-worker. (*Id.* ¶¶ 34, 44, 47). A couple weeks after his suspension, his medical coverage was "revoked without warning." (*Id.* ¶ 56). Adamant that wrongful conduct was going unchecked and GSPP was trying to silence him, Painadath filed a complaint pursuant to the ACA with the Occupational Safety and Health Administration on December 5, 2021. (*Id.* ¶ 57). After doing so, a GSPP administrator called him and told him he should have filed his complaint with the Equal Employment Opportunity

Commission, not OSHA. (*Id.* ¶ 59). On December 14, 2021, nine days after filing the ACA complaint with OSHA, Painadath was fired. (*Id.* ¶¶ 56–57, 60).

II

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. It "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *Pro se* litigants' pleadings must be liberally construed, although they "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III

A party may amend its pleading once as a matter of right either within twenty-one days after serving the initial complaint or within twenty-one days following service of an opposing party's motion brought under Rule 12(b). Fed. R. Civ. P. 15(a). In all other cases, a party may only amend its pleading with the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Painadath amended his complaint once as a matter of right following GSPP's first motion to dismiss. *See* (ECF

3

16). Painadath violated Rule 15(a) by filing a third amended complaint without GSPP's written consent or the Court's leave, and the Court will strike it and consider GSPP's motion to dismiss Painadath's second amended complaint. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Bifulco v. SmithKline Beecham Corp.*, No. 06-3567, 2007 WL 2726146, at *3 (E.D. Pa. Sept. 18, 2007) (striking *pro se* plaintiff's second and third amended complaints for being "completely out of compliance with Rule 15").

IV

A

Under the Older Adults Protective Services Act, individuals are permitted, and in certain instances required, to report to the area agency on aging if they believe an older adult (age sixty or above) is the victim of abuse or in need of protective services. 35 P.S. §§ 10225.101 *et seq*. "Any person making a report or cooperating with the agency . . . shall be free from any discriminatory, retaliatory or disciplinary action by an employer . . . ." 35 P.S. § 10225.302(c). "Agency" means "[t]he local provider of protective services, which is the area agency on aging or the agency designated by the area agency on aging to provide protective services in the area agency's planning and service area." 35 P.S. § 10225.103.

Painadath plausibly alleges in Count I a retaliation claim under OAPSA. On October 30, 2021, he says he notified a clinical coordinator named "Mrs. Susan" of patient neglect of an "older African American adult patient," whom he believed was over the age of sixty and covered under the statute. (Second Am. Compl. ¶¶ 50–52).

4

Painadath says he was "suspended . . . in retaliation" for reporting the patient neglect to Mrs. Susan. (*Id.* ¶ 54). About a week later, Painadath says he "gave an oral report" to the local area of aging, and a week after that, his medical coverage was apparently "revoked without warning." (*Id.* ¶¶ 55–56). A month later, he was terminated. (*Id.* ¶ 61). Those allegations suffice for now.

B

In Counts II and III, Painadath alleges GSPP "discriminated against plaintiff based on his SEX; MALE; by failing to stop a hostile work environment," and similarly, Painadath alleges "This defendant discriminated against plaintiff based on his Religious views Catholic; by failing to stop hostile work environment." (Second Am. Compl. ¶¶ 8–9). Whether Painadath's claims under Title VII are for intentional discrimination, hostile work environment or both, they fail because he alleges no facts sufficient to show he was discriminated against because of his sex or religion.

1

To establish a *prima facie* case for disparate treatment based on his religion[1] and sex, Painadath must show (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional

---

[1] Under Title VII, employees may assert two forms of religious discrimination: failure to accommodate and disparate treatment. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 281 (3d Cir. 2001). Though his complaint is difficult to discern, it appears Painadath is asserting a disparate treatment claim. To the extent he attempts to bring a failure to accommodate claim, Painadath would need to show that he: (1) holds a sincere religious belief that conflicts with a job requirement; (2) informed GSPP of the conflict; and (3) was disciplined for failing to comply with the conflicting requirement. *Groff v. DeJoy*, 35 F.4th 162, 168 (3d Cir. 2022) (citing *EEOC v. GEO Grp., Inc.,* 616 F.3d 265, 271 (3d Cir. 2010)). Painadath does not allege facts which could establish any of these elements.

5

discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). To survive a motion to dismiss, however, Painadath need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Painadath does not meet that low burden, as he makes only conclusory assertions that "GSPP disregarded" his patient safety submissions because he is a Catholic male whereas it "acted swiftly and responsibly" to submissions by females and non-Catholics. (Second. Am. Compl. ¶¶ 68–69). Aside from his bald assertions that GSPP favored women and non-Catholics, Painadath alleges no facts which could show similarly situated individuals were treated more favorably, nor does he show how this alleged conduct was connected to his suspension, loss of benefits or termination. *Chernobai v. Hydraulax Products, Inc.,* No. 14-6938, 2015 WL 710464, at *3 (E.D. Pa. Feb. 19, 2015) ("Without some connection between the alleged disparate treatment and [the plaintiff's] termination, [plaintiff] has not pled facts sufficient to raise a reasonable inference of discrimination."). Moreover, he asserts no facts establishing a plausible inference GSPP was aware of his religion, and to state a claim for religious discrimination, "employees [must have] informed their employers of their religious beliefs prior to the alleged discriminatory action" because an "employee's religion . . . is often unknown to the employer." *Darby v. Temple University*, 216 F. Supp.3d 535, 542 (E.D. Pa. 2016).

2

To succeed on a hostile work environment claim, Painadath must establish that: (1) he suffered intentional discrimination because of his protected status; (2) the

discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is *respondeat superior* liability. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Title VII is not a "general civility code," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and a hostile work environment claim must be related to unlawful discrimination. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). While Painadath says he experienced "emotional and psychological stress," was assaulted, called names, forced to take difficult assignments and experienced "emotional and psychological stress," (Second Am. Compl. ¶¶ 35, 44, 48), he does not allege any facts indicating that treatment was based on a discriminatory animus. None of the names he was allegedly called implicate his sex or religion, he does not specify how his religion or sex were motivating factors in the job assignments he received, and he does not point to any specific comment or action related to his religion or sex.[2] *See* (*Id.* ¶¶ 35, 48).

C

To prevail on his ACA whistleblower claim, Painadath must demonstrate: (1) he engaged in activity that the ACA protects; (2) GSPP took adverse action against him; and (3) the protected activity was a contributing factor in the adverse action. *See*

---

[2] GSPP argues that Painadath's Title VII claims are time-barred—and thus amendment would be futile—because Painadath did not bring his Title VII claims within ninety days of receiving notice of his right to sue under the EEOC. (Mot. To Dismiss, at 13, ECF 37-1). A civil action under Title VII must be commenced within ninety days of receiving a right-to-sue letter. 42 U.S.C. 2000e-5(f)(1). This time limit is "akin to a statute of limitations" and subject to equitable tolling. *Rockmore v. Harrisburg Property Service*, 501 F. App'x 161, 164 (3d Cir. 2012) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982). At this juncture, the Court cannot rule out the possibility that equitable tolling could apply. In his third amended complaint, Painadath should, to the extent he is able, allege facts that could establish the doctrine's applicability.

*generally Gallas v. Medical Ctr. of Aurora,* ARB Nos. 16-012, 15-076, 2017 WL 2222626, at *6–8 (ARB Apr. 28, 2017). An employee is protected by the ACA if he provides information or complains to his employer about, or refuses to participate in, conduct that he reasonably believes violates any provision of Title I of the ACA. 29 U.S.C. § 218c(a)(2), (5). To be protected, the employee must show that he reasonably believed, in good faith, that the conduct about which he complained constituted a violation of law, and that his belief was objectively reasonable. *See generally Wong v. Sumitomo Mitsui Banking Corp.*, ARB No. 18-0073, 2020 WL 6689650, at *2 (ARB Oct. 26, 2020). The employee's belief is objectively reasonable if a reasonable person in the same factual circumstances and with the same training and experience would have also believed that the conduct about which the complaint constituted a violation of law. *Id.*

      Painadath sufficiently alleges that GSPP took an adverse action against him for reporting conduct he reasonably believed violated Title 1 of the ACA. The ACA includes a nondiscrimination provision, which says that an individual cannot be excluded from a health program "on the ground prohibited under" Title VII (race, color or national origin); Title IX (sex); the Age Discrimination Act (age); or 29 U.S.C. § 794 (disability). 42 U.S.C. § 18116(a). Painadath contends GSPP violated this provision by neglecting an elderly, African American patient and that he reported this alleged violation to "Mrs. Susan." (Second. Am. Compl. ¶¶ 50–51, 54). After making this report, Painadath says he was suspended and his medical coverage revoked "without warning." (*Id.* ¶ 56). He then filed a formal complaint with OSHA on December 5,

8

2021, alleging an "ACA violation," and received a call from a GSPP administrator acknowledging his complaint. (*Id.* ¶¶ 57–59). GSPP then fired him.[3] (*Id.* ¶ 60).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] GSPP similarly argues Painadath's ACA whistleblower claim is time barred and attached documents from the Department of Labor to its motion to dismiss supporting that assertion. *See* (ECF 37-2, at 6–19). Again, at this stage, the Court cannot rule out the possibility that equitable tolling could apply.